This back pay claim under 28 U.S.C. §1491 is before us on the usual cross-motions for summary judgment. We have considered briefs, exhibits, and oral argument. Plaintiff, formerly a foreign service secretary, FSS-10, complains of termination of her employment by adverse action. Since she was in the excepted service, the procedures under review are prescribed internally by the State Department and it is conceded the Merit Systems Protection Board had no jurisdiction. The facts have been found after hearing conducted by retired Judge Melvin Pollack for the Board of the Foreign Service, and his findings are not denied to have the support of substantial evidence except his ultimate conclusion. However, plaintiff submits additional documents with her motion. We do not perceive any need for a remand to the board for consideration of this evidence because it adds nothing material to the facts exhaustively and fairly found by Judge Pollack.
Plaintiff had been in the Foreign Service since 1970 and with the United States NATO Mission in Brussels since January 1975. The mission being concerned over her erratic work attendance, she was ordered to return to Washington for a new medical and psychiatric examination. This was conducted by government doctors and is conceded to have been without cost to plaintiff. June 14, 1976, the Department’s Medical Division cleared her for duty and for return to her post "if a different job is available for her there.” On August 16, 1976, she returned physically to Brussels. She was there until September 14, 1976, during which a bizarre series of events took place which did not include the rendition of useful service by plaintiff.
It seems the three United States diplomatic missions at Brussels were unable to locate a position for plaintiff wholly separate from the previous one; she was assigned a *1029 new job but still in the NATO mission among the same employees who were not among plaintiffs favorite people. She apparently remained in her quarters protesting to the department, claiming an absolute promise for relocation to one of the other missions. August 19 she demanded of the Assistant Secretary to "stop being evasive.” The mission was humble indeed, in effect acquiescing in rules established by her, that she would not work at all until the job location was satisfactory. Judge Pollack faults it for not expressly admonishing her that her conduct was insubordinate. August 25 she attended a meeting of the American Foreign Service Association. After the meeting she prepared a telegram denouncing the participation in the meeting of the Deputy Chief of Mission, and got into an altercation with the Deputy Chief and other management officials because they refused to send it "under” (we suppose Judge Pollack means "over”) the signature of the Ambassador. She still refused to work saying her "well being” would be affected.
Meanwhile, on August 27 the Ambassador requested the department to terminate plaintiffs assignment to his mission. On September 3 the department informed plaintiff it proposed to separate plaintiff for being awol. Plaintiff finally left for Washington September 14. Why the mission was so helpless to deal with plaintiff the record does not reveal.
Back in Washington, September 24, the department directed her to report for another "comprehensive psychiatric and clinical psychology examination.” She, by advice of her then counsel, chose to regard this direction as "harassment.” She should have realized, however, that the bizarre history of her recent month in Brussels would raise a doubt as to her mental disability in the mind of any reasonable person, and furthermore, that in view of her then prospects of speedy termination of United States Government employment, a determination of psychiatric disability would generate a modest annuity and thus be to her pecuniary advantage. An employer who has suffered what this one had, who raises sua sponte the issue of psychiatric disability, can do so only out of a humane unwillingness to turn an apparently unemployable person out on the street without *1030 means of support. Her able present counsel, however, most expressly waived and disavowed in open court, any contention that she was on that date disabled in any respect, psychiatric or other. It is suggested she now has tuberculosis and may have had it then. If so, the refused examination might have speeded its discovery.
She refused, at any rate, to report for the examination ordered and this was added to the prolonged awol in Brussels as a second ground for separation. Judge Pollack sustained this second ground, but rejected the first. He held, in effect, that the reactions of the United States officials at Brussels to her refusal to work there was so weak that in legal effect they condoned her position and could not adduce it as grounds for separation. This latter determination we are not called on to review.
It appears that after all procedures were exhausted, the Secretary, July 11,1977, notified plaintiff that she would be removed unless she took the fitness-for-duty examination and established that her insubordinate conduct was due to a mental or other medical disorder. She was, according to the petition, examined by a psychiatrist July 20, 1977, and it was determined that her conduct was not due to such disorder. She was therefore separated from the payroll August 10, 1977. If one assumes she rendered no useful service after her departure to Brussels, August 16, 1976, it then appears she remained on the payroll well over a year without useful service. This, however, is not enough; she wants pay from August 10, 1977, to the date of judgment.
The claim of harassment is clearly unwarranted. The expense of the medical or psychiatric examinations was borne entirely by the government and on government time, plaintiff remaining on the payroll though rendering no useful service. The bizarre events in Brussels clearly warranted the agency in suspecting psychiatric disability despite the recent previous clearance, and plaintiff should have realized as much. If anybody was harassing anybody, it was the plaintiff, who afflicted the department with repeated demands for special favors and imputations against the good faith of everyone but herself, while rendering no useful service. When the facts suggest a possibility of psychiatric disability, an order to the employee to undergo psychiatric examination is legitimate and not *1031 harassment. Pryor v. United States, 212 Ct. Cl. 578, cert. denied, 434 U.S. 824 (1977).
Any alleged errors by Judge Pollack in admitting and excluding evidence are clearly not prejudicial, for his findings affirmatively show he had before him and considered all the relevant facts which the excluded evidence would have shown.
We have not considered defendant’s equitable defense of laches. In view of the obvious deficiencies in plaintiffs case, it is unnecessary to do so.
Defendant’s motion for summary judgment is granted, plaintiffs cross-motion for summary judgment is denied, and the petition is dismissed.
Plaintiffs motion for rehearing en banc was denied July 16, 1982. Plaintiffs petition for a writ of certiorari was denied January 10,1983.